**Angel TORRES, Plaintiff,**

v.

**William P. MAZZUCA, Superintendent, at Fishkill Correctional Facility, Thomas G. Eagen, Director of Inmate Grievance Program for the Department of Correctional Services, B. Depasquale Correctional Officer at Fishkill Correctional Facility, John Doe 1 Correctional Lieutenant at Auburn Correctional Facility, Captain Pelc, Correctional Captain at Fishkill Correctional Facility, Captain Rourke, Correctional Captain at Auburn Correctional Facility, Captain N. Bezio, Correctional Captain at Upstate Correctional Facility, Defendants.**

No. 02 Civ. 2152(VM).

United States District Court, S.D. New York.

Feb. 25, 2003.

Angel Torres, Romulus, NY, Pro se.

Nicola N. Grey, Michael J. Keane, Asst. Attorney General, NYS, New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Angel Torres ("Torres"), proceeding *pro se*, filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Defendant B. Depasquale ("Depasquale") answered the complaint. Defendants William Mazzuca ("Mazzuca"), Thomas Eagen ("Eagen"), Arlen Pelc ("Pelc"), John Rourke ("Rourke") and N. Bezio ("Bezio") filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6). On April 18, 2002, Torres identified defendant John Doe 1 as Lieutenant Kruger ("Kruger") but has not served that defendant. For the reasons discussed below, the motion is GRANTED in its entirety.

## I. BACKGROUND

According to the Complaint, on or about June 10, 2001, while Torres was housed in a Special Housing Unit ("SHU") at Fishkill Correctional Facility ("Fishkill"), he translated a request to Depasquale, a corrections officer at Fishkill, for toilet paper made by the inmate housed in the cell adjoining his who did not speak English. In response, Depasquale swore and denied the request, telling Torres to mind his own business and instructing him to inform the other inmate to "wash up in the toilet or use his washcloth." (*See* Amended Complaint, dated February 15, 2002 (the "Compl."), ¶¶ 20–22.) Depasquale then left. Shortly thereafter, Torres reported this incident to the Sergeant on duty, who assured Torres that Depasquale would deliver toilet paper. When Depasquale delivered toilet paper ten or fifteen minutes later, he said: "Torres don't forget you snitched on me to the Sergeant. I am gonna be here on June 25th 2001 [the day Torres was to be released from SHU] and you're gonna get it, I promise." (Compl.¶ 25.) Torres did not grieve or otherwise inform prison officials of this threat.

The Complaint further alleges that on June 25, 2001, Depasquale again threatened Torres by stating "Torres, I'm here and I'm gonna get you!" (*Id.* at ¶ 26.) Shortly thereafter, Depasquale, along with two other lieutenants, appeared to release Torres from SHU confinement. Torres alleges that Depasquale handcuffed him and "pat frisked" him roughly, including intentionally grabbing him in the groin area. (*Id.* at ¶ 27.) When Torres objected to Depasquale's "improper pat frisk," Depasquale slammed his head against the wall. (*Id.*)

Once the officers waist chained and handcuffed Torres, Torres alleges that they took him to the "strip room" where Depasquale punched Torres in the face, causing him to fall to the ground unconscious. (*Id.* at ¶¶ 28, 29.) Torres regained consciousness when he was lifted from the ground, and noticed a pool of blood beneath him. The Court will refer to these alleged events as the "Incident".

Torres was then taken to the hospital and received 19 stitches around his mouth area. Torres was also examined by a dentist who diagnosed "apical root fractures" and had to pull two of Torres' front teeth. (*Id.* at ¶¶ 30, 31.) The Dentist opined that Torres would never recover from the nerve damage he suffered. (*Id.*) Torres

attached to the Complaint certain medical records reflecting this treatment. (*See id.* Exhs. I, P.) Upon his return from his medical appointments, Torres was again placed in SHU confinement.

On the same day as the Incident, Depasquale filed an Inmate Misbehavior Report charging Torres with assaulting staff, violent conduct, disobeying a direct order, interference with an employee, and violation of a search and frisk procedure. (*See id.* Exh. J (the "Misbehavior Report").) The Misbehavior Report sets forth a very different account of the Incident from Torres's, essentially stating that because of Torres's aggressive and disruptive behavior, Depasquale punched him in self-defense. At the June 29, 2001 hearing held in response to Depasquale's charges, Torres argued that the Misbehavior Report was a fabrication. Mazzuca, Superintendent of Fishkill, presided over the hearing. The hearing was adjourned to review evidence and to arrange for Torres's witnesses to be summoned. The hearing was never reconvened. Instead, on July 7, 2001, Torres was released from SHU. Torres filed a request for the hearing tape, the Misbehavior Report and disposition, as well as pictures that were taken of him after the Incident is alleged to have occurred. He was informed by letter from corrections officer T.L. Favro, dated October 18, 2001, that no file existed. (*See id.* Exh. L.)

On June 26, 2001, Torres filed a grievance regarding the Incident. Receiving no response, he submitted a second grievance on July 4, 2001. Again receiving no response, he filed a third grievance on July 17, 2001.

Torres finally was interviewed by Kruger, a correctional lieutenant at Auburn Correctional Facility, on August 13, 2001. According to Torres, Kruger submitted a report stating that Depasquale "denies in writing that he assaulted the grievant" and apparently did not interview any witness or review any video surveillance tapes that might exist. (*Id.* at ¶ 46.) Based on Kruger's findings, a report was issued denying Torres's grievance (the "Kruger Report"). (*Id.* Exh. E.) Torres appealed the Kruger Report to Eagen, Director of the Inmate Grievance Program. Bezio, another corrections officer, was then assigned to conduct a second investigation. On December 19, 2001, when Bezio appeared to interview Torres, Torres was distressed to find that Bezio was not able to interview Depasquale and did not have any videotapes to review. Bezio's investigation affirmed the Kruger Report and the appeal was denied. (*Id.* Exh. H.)

Torres wrote to Commissioner Goord ("Goord"), the Commissioner of the Department of Correctional Services, explaining the Incident, the existence of the video and audio tapes recording the Incident, the denial of his grievances and requested assistance in prosecuting his grievance. In response, he received a letter from Lucien J. Leclaire, Jr. ("Leclaire"), Deputy Commissioner of the Department of Correctional Services, dated December 5, 2001 (*Id.* Exh. O.) Leclaire informed Torres that the Incident had been recorded as an "unusual incident (assault on staff)." In addition, Leclaire pointed to the Doe Report investigation, and indicated that corrections officer Pelc had reviewed the video tape of Torres's escort from the gallery to the strip frisk area and found nothing to support Torres's claims. Further, Leclaire stated that the Misbehavior Report charges were dismissed because the disciplinary hearing was not completed in a timely manner. Thus, Leclaire found no factual support in the grievance record for Torres's assault claim.

In addition to the physical injuries he suffered, Torres argues that he was de-

prived of due process because the prison investigations into his grievances were incomplete and did not address the severity of his injuries. Torres asserts that Mazzuca failed to protect him from the assault by Depasquale and then failed to ensure that a full investigation be conducted, thus violating the Eighth and Fourteenth Amendments. Torres claims that corrections officers Bezio, Doe, Pelc and Rourke failed to investigate or prepare fair reports. Torres also asserts that Rourke conducted an unfair Hearing by excluding witnesses and failing to issue a written disposition. Torres's claim against Depasquale for cruel and unusual punishment in violation of the Eighth Amendment are not put at issue by the motion to dismiss now before the Court.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

A district court may grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) only if it appears beyond a doubt that the non-moving party could prove no set of facts that would entitle it to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994). On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a Court accepts all well-pleaded factual assertions in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *McGinty v. State of New York,* 193 F.3d 64, 68 (2d Cir.1999).

When considering motions to dismiss the claim of plaintiffs proceeding *pro se,* courts are instructed to construe the pleadings liberally. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Weinstein v. Albright,* 261 F.3d 127, 131–132 (2d Cir.2001); *Flaherty v. Lang,* 199 F.3d 607, 612 (2d Cir.1999).

This is especially true when dealing with civil rights complaints. *See, e.g., Herschaft v. N.Y. Board of Elections,* 234 F.3d 1262 (2d Cir.2000). However, complaints "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987).

The Court does not consider matters outside of the pleadings. To do so would convert the motion into one for summary judgment, which, at this stage of the proceedings, the Court declines to do. *See Friedl v. City of New York,* 210 F.3d 79, 83–84 (2d Cir.2000). Nevertheless, the district court's consideration of documents attached to, or incorporated by reference in, the complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment. *See Leonard F. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999).

### B. *EIGHTH AMENDMENT CLAIM AGAINST MAZZUCA*

Defendants argue that Mazzuca was not personally involved in the alleged violation of Torres's Eighth Amendment rights and therefore the claim against him must be dismissed. Torres argues that the motion is "premature."

 To establish a cognizable claim under 42 U.S.C. § 1983, a plaintiff must allege conduct under color of state law that deprives him of rights secured by the Constitution or laws of the United States. *See, e.g., Katz v. Klehammer,* 902 F.2d 204, 206 (2d Cir.1990). To survive a motion to dismiss, plaintiff must allege that the defendants were directly involved in the alleged violations of plaintiff's constitutional

rights. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987). Because Torres does not assert facts that indicate that Mazzuca was personally involved with the Incident alleged to have violated Torres's Eighth Amendment rights, the claim against Mazzuca must be dismissed.

 It is clearly settled that "[i]n order to establish a violation of his Eighth Amendment rights, an inmate must show (1) a deprivation that 'is objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities,' and (2) a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d at 164 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). A prison official may be found to have had a sufficiently culpable state of mind only if he (i) participated directly in the alleged event, (ii) learned of the inmate's complaint and failed to remedy it, (iii) created or permitted a policy that harmed the inmate, or (iv) acted with gross negligence in managing subordinates. *Gaston*, 249 F.3d at 164; *see also Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986); *Johnson v. Newburgh*, 239 F.3d 246, 254 (2d Cir.2001); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995). Personal liability cannot be imposed on a state official under a theory of respondeat superior. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir.1999).

In *Colon*, the plaintiff claimed that Coughlin, then Commissioner of the Department of Correctional Services ("DOCS"), was grossly negligent in training and supervising the corrections officers under his management. 58 F.3d at 873. The plaintiff's verified complaint, however, set forth no facts indicating that Colon had any knowledge that would support a claim that Coughlin either knew of or should have known of the wrongs or risks alleged by Colon. *See id.* at 873–874. Accordingly, the claim was dismissed as to Coughlin. Similarly, in *Gaston*, the Circuit Court held that dismissal based on lack of personal involvement was inappropriate because the defendant prison officials were alleged to have had actual knowledge of the alleged unconstitutional prison conditions. 249 F.3d at 166. In both cases, the importance of pleading actual knowledge or direct involvement on the part of the defendant in order to hold the defendant liable for an Eighth Amendment violation is stressed.

Torres claims that Mazzuca failed to protect him from the assault, thus violating the Eighth Amendment. The Complaint in this action is well organized, setting forth Torres's factual allegations and legal claims in a coherent manner. Nevertheless, it contains no facts that show Mazzuca played a part in the Incident or that he had knowledge of, or reason to have knowledge of, any danger to Torres prior to the Incident that could place particular responsibility on Mazzuca for protecting Torres from the Incident. As such, it does not appear that Mazzuca was aware of any specific risk to Torres, which he ignored. Nor do the factual allegations in the Complaint suggest a custom or practice at Fishkill to deprive inmates of their rights of which Mazzuca was aware or personally responsible for. In fact, the only mention of Mazzuca in connection to the Eighth Amendment claim against him in the Complaint is a broad allegation that Mazzuca had a duty to protect Torres. Therefore, based only on the fact that the Incident occurred, Torres contends that Mazzuca violated Torres's Eighth Amendment rights by failing to protect him. Thus, any personal involvement of Mazzuca in the

Incident that is the basis for Torres's Eight Amendment claim would invoke respondeat superior and therefore is not cognizable. Accordingly, the Court finds that, as it is pleaded, the Complaint does not allege any personal involvement in the Incident by Mazzuca, and therefore, Torres does not state an Eighth Amendment claim against Mazzuca.

## C. DUE PROCESS

Torress alleges two administrative processes that resulted in the denial of his due process rights. First, Torres alleges that his *Fourteenth Amendment* due process rights were violated by Rourke's failure to conduct a proper hearing and investigation with respect to the charges in the Misbehavior Report filed by Depasquale. Second, Torres alleges that Mazzuca, Eagen, Pelc, Kruger and Bezio violated his due process rights by failing to properly investigate Torres's grievances concerning the Incident. Torres's due process claims must be dismissed because he has not been deprived of a protected liberty interest that would afford him the constitutional right to more process than he was given.

■ It is well settled that "a prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first 'identify a liberty interest protected by the Due Process Clause of which he was deprived.'" *Williams v. Goord,* 111 F.Supp.2d 280, 288 (S.D.N.Y.2000) (internal citations omitted). The deprivation of a state-created liberty interest does not rise to the level of a constitutional violation requiring due process before its imposition unless the punishment imposed amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Welch v. Bartlett,* 196 F.3d 389 (2d Cir.1999). Fur-

thermore, the prisoner must establish that "the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint." *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996). Only if the prisoner meets these two elements, the court then addresses " 'whether the deprivation of that liberty interest occurred without due process of law.' " *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (quoting *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996)). After *Sandin,* a prisoner has no actionable due process claim if other prisoners typically experience approximately the same deprivation as a result of the "ordinary administration of the prison." *Williams,* 111 F.Supp.2d at 288 (quoting *Welch,* 196 F.3d at 393.) "Due process claims are reserved instead for those prisoners who endure hardships that are 'substantially more grave' than those hardships that prisoners would ordinarily experience as members of the general population." *Id.* (internal citations omitted).

In this case, based on Torres's Complaint, upon his return from the doctor and dentist after the Incident on June 25, 2001, Torres was placed in SHU confinement and was released on July 7, 2001. (*See* Compl. ¶¶ 34–37.) The reason for his release was allegedly not disclosed to Torres, but appears to have been due to the fact that the hearing was not completed in a timely manner, and therefore all charges were dismissed. (*See* Compl. Exh. O.) As such, Torres admittedly spent approximately 12 days in SHU because of the Misbehavior Report filed by Depasquale. Torres does not allege that the SHU confinement was other than ordinary solitary confinement.

■ Twelve days in SHU confinement pending a hearing based on a prison officer's charges and its outcome, are not

"atypical and significant." In fact, the conditions of ordinary SHU confinement, at least for short intervals, may be imposed on prison inmates in the regular course of prison life, not connected with disciplinary punishment. *See Sandin*, 515 U.S. at 486, 115 S.Ct. 2293 ("disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody.") In this case, the SHU confinement appears to have been interim confinement pending the disciplinary hearing on charges which were then thrown out. The law in the Second Circuit is clear that such short-term confinement pending a disciplinary hearing is administrative, not punitive. *See Bolden v. Alston*, 810 F.2d 353, 357 n. 3 (2d Cir.1987); *Garrido v. Coughlin*, 716 F.Supp. 98, 102 (S.D.N.Y.1989). Therefore, in accordance with the holding in *Sandin*, Torres's twelve day SHU confinement did not "exceed similar, but totally discretionary, confinement in either duration of degree of restriction" creating an "atypical and significant hardship." 515 U.S. at 486, 115 S.Ct. 2293.

While there is no bright-line test in terms of the duration of SHU confinement that meets the "atypical and significant" standard, *see Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir.1999), the Second Circuit has held that SHU confinements under 101 days do not necessitate detailed factual records. *See Colon v. Howard*, 215 F.3d 227, 232 (2d Cir.2000). Many district courts in this Circuit have found that periods much longer than the twelve days of ordinary SHU confinement alleged here could not meet the *Sandin* burden. *See, e.g., Williams*, 111 F.Supp.2d at 289 (75-day confinement was not "onerous" or an "atypical and significant" burden under *Sandin*); *Alvarado v. Kerrigan*, 152 F.Supp.2d 350, 355 (S.D.N.Y.2001) (plaintiff's SHU confinement for 93 days was not found to be an "atypical and significant" deprivation). In fact, the Second Circuit recently noted that the longest confinement in normal SHU conditions ruled constitutional was 101 days. *Howard*, 215 F.3d 227, 231 (citing *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir.1999)). Furthermore, it appears that the Second Circuit's post-*Sandin* decisions are unanimous that keeplock confinements of sixty days or less in New York prisons are not "atypical hardship." *See, e.g., Frazier*, 81 F.3d at 317–18 (neither twelve-day confinement in SHU nor eleven-day confinement in Close Supervision Unit was the kind of atypical, significant deprivation in which New York might conceivably create a liberty interest); *Harris v. Keane*, 962 F.Supp. 397, 404 (S.D.N.Y.1997) (23 days SHU); *Duncan v. Keane*, No. 93 Civ. 6026, 1996 WL 511573, at *2 (S.D.N.Y. Aug. 22, 1996) (58 days keeplock); *Camacho v. Keane*, No. 95 Civ. 0182, 1996 WL 204483, at *2 (S.D.N.Y. April 25, 1996) (40 days keeplock); *Zamakshari v. Dvoskin*, 899 F.Supp. 1097, 1108 (S.D.N.Y.1995) (60 days SHU).

Torres does not even allege in his Complaint that such a confinement was atypical and significant; he focuses only on the injustices of the disciplinary hearing itself. Despite such alleged injustices, however, Torres was released from the charges after twelve days in SHU without receiving any punishment. Since Torres claims no protected liberty interest that he was deprived of because of the allegedly inadequate hearing, he can not claim due process violations at the hearing. Accordingly, Torres's claim against Rourke for due process violations at Torres's disciplinary hearing fails as a matter of law and is dismissed.

Next, Torres alleges that his due process rights were violated because a proper investigation into the Incident, including interviewing his named witnesses, and re-

viewing the videotape, audiotape and other documents that Torres alleges would clearly demonstrate Depasquale's inappropriate behavior on June 25, 2001, was never conducted in response to Torres's submission of a number of grievances concerning the Incident.

To state any claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. . . ." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) As has been discussed above, in order for the due process requirements of the Fourteenth Amendment to apply, Torres must have been deprived of a protected liberty interest. *See White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061–62 (2d Cir.1993) ("In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest.") For a state-created liberty interest to be protected, its deprivation must amount to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483, 115 S.Ct. 2293.

The corrections officers' failure to properly address Torres's grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because Torres was not deprived of a protected liberty interest. Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protec-tions envisioned by the Fourteenth Amendment. *See Mahotep v. DeLuca*, 3 F.Supp.2d 385, 390 n. 3 (W.D.N.Y.1998); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *cf. Harris*, 962 F.Supp. at 406 (prison regulations requiring that a grievance disposition be returned within 15 days do not create an interest to which due process rights attach). Moreover, Torres admits that he received various letters in response to his grievances and that prison officers were sent to interview him to investigate the Incident. The Kruger Report also indicates that Depasquale was questioned but denied Torres's version of the Incident. Torres complains that such responses were not adequate in that his witnesses were not interviewed and various forms of evidence that he alleges exists was not examined. However, the breadth of any investigation remains in the discretion of the officers conducting the investigation.[1] Torres does not have a protected liberty interest in having his grievances investigated at the level of thoroughness that he desires, and therefore he can not assert a due process claim as to such failures. Under the applicable standard in *Sandin*, the failure to conduct an extensive investigation into Torres's charges does not impose an "atypical and significant hardship" upon Torres sufficient to create a protected liberty interest. Accordingly, Torres's due process claims against Mazzuca, Eagen, Pelc, Kruger and Bezio concerning the failure to fully investigate his grievances are dismissed.

---

**1.** Torres does have the right appeal determinations with respect to a grievance, as he did. Furthermore, Torres ultimately has the right to have such determinations reviewed by this Court if they allege violations of his constitutional rights and were not satisfactorily redressed by the prison grievance system. Therefore, Torres's Complaint concerning the Incident properly comes to this Court for re-view, but any alleged inadequacies or unfavorable decisions concerning the prison's internal grievance process do not give Torres the right, as a matter of course, to have the Court consider not only the Eighth Amendment charge which was the subject of his grievance, but also due process allegations based on failures in the grievance system.

### III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that the motion to dismiss the Complaint as to Defendants Mazzuca, Rourke, Bezio, Kruger, Eagen, and Pelc is granted.

**SO ORDERED**.