**Rahsaan WILLIAMS, Plaintiff,**

**v.**

**Commissioner Glenn S. GOORD; Director Special Housing/Inmate Discipline Donald Selsky; Superintendent Robert H. Kuhlmann; Deputy Superintendent for Security D.G. Aidala; Captain Peter Healy; Lieutenant J. Haynal; Sergeant Brickner; Corrections Officer J. Portz; Corrections Officer K. Sanok; and Corrections Officer Douglas Smith, in their individual capacities, Defendants.**

**No. 99 CIV. 1680 (SAS).**

United States District Court, S.D. New York.

Jan. 24, 2001.

---

See also, 111 F.Supp.2d 280.

Roger G. Brooks, Stephen J. Elliot, Aviva Wertheimer, Amy Tully Ackert, Cravath, Swain & Moore, New York City, for Plaintiff.

Bruce Brown, June Duffy, Jerry Slater, Assistant Attorneys General for the State of New York, New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff Rahsaan Williams brings this action, pursuant to 42 U.S.C. § 1983, against officials with the New York State Department of Correctional Services ("DOCS") and employees at the Sullivan Correctional Facility ("Sullivan").[1] Plaintiff alleges that while incarcerated at Sullivan, his Fourteenth, First and Eighth

1. Plaintiff has since discontinued his Eighth Amendment claim against Lieutenant J. Hay-    nal.

Amendment rights were violated.[2] Plaintiff is seeking declaratory relief, compensatory damages for both physical injuries and mental and emotional distress, punitive damages, costs and reasonable attorneys' fees, and any other relief that this Court deems proper.[3] *See* Am. Compl. ¶ 40 and Prayer for Relief ¶¶ 1–5.

In *Williams I*, defendants moved for summary judgment on the ground that plaintiff had failed to demonstrate that his Eighth Amendment right to be free of cruel and unusual punishment had been violated based on a total deprivation of the right to engage in meaningful exercise. *See* 111 F.Supp.2d at 284. Defendants' motion was denied and plaintiff was allowed to proceed on his claim against Goord, Healy, Aidala, and Kuhlmann, in their individual capacities.

Plaintiff now moves for partial summary judgment claiming that: (1) he was effectively denied all meaningful exercise in violation of the Eighth Amendment; and (2) defendants are not entitled to qualified immunity which would shield them from liability for money damages. In response, defendants have cross-moved for summary judgment on the ground that they are entitled to qualified immunity. For the reasons stated below, both motions are denied, with one exception relating to qualified immunity.[4]

## I. BACKGROUND

The facts of this dispute are set forth in detail in *Williams I*, familiarity with which is assumed. Only those facts relevant to the instant motions are detailed below.

### A. The Deprivation

Prisoners housed in SHU facilities operated by DOCS in 1998 were entitled to one

---

**2.** This Court's decision in *Williams v. Goord*, 111 F.Supp.2d 280 (S.D.N.Y.2000) (*"Williams I "*), dismissed all of plaintiff's claims except for his Eighth Amendment claim against Commissioner of Corrections Glenn S. Goord, former Superintendent of the Sullivan facility, Robert H. Kuhlmann, Deputy Superintendent of Security of the Sullivan facility, D.G. Aidala, and Captain Peter Healy in their individual capacities. Subsequent to that decision, plaintiff amended his Complaint, naming the statewide Director of the Special Housing/Inmate Discipline Unit for DOCS, Donald Selsky, Sergeant Brickner, Corrections Officers J. Portz, K. Sanok, and D. Smith as additional defendants. *See* Am. Compl. ¶ 3.

**3.** Plaintiff seeks a judgment declaring that the policy requiring inmates confined in the Sullivan Special Housing Units ("SHU") under a restraint order to wear mechanical restraints while in the exercise cage is cruel and unusual punishment in violation of the Eighth Amendment. *See* Am. Compl. at Prayer for Relief ¶ 1. However, because plaintiff was transferred from Sullivan to another facility on September 2, 1998, his claim for declaratory relief is moot and hereby dismissed. *See Young v. Coughlin*, 866 F.2d 567, 568 n. 1 (2d

Cir.1989) (plaintiff's transfer from the facility against which he sought declaratory relief rendered those claims moot); *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir.1986) (same); *Courts v. Coombe*, No. 95 Civ. 2350, 1996 WL 312357, at *2 (S.D.N.Y. June 11, 1996) (same). In addition, although plaintiff does not specifically seek injunctive relief, "[it] is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir.1996); *see also Graham v. Perez*, 121 F.Supp.2d 317, 325 (S.D.N.Y.2000); *Brown v. Williams*, No. 95 Civ. 3872, 1998 WL 841638, at *2 (E.D.N.Y. Dec. 2, 1998). Accordingly, no injunctive relief directed to the Sullivan facility may be awarded. However, because plaintiff will be subject to the same restraint order at Southport Correctional Facility, where he is scheduled to be returned after trial, plaintiff has requested leave to amend his Complaint to proceed against Commissioner Goord and Director Selsky in their official capacities. Decision is reserved on this issue.

**4.** Defendants Portz, Sanok, and Smith are entitled to qualified immunity. *See infra* Part III.D.

hour of out-of-cell exercise per day. *See* 9/18/95 DOCS Directive 4933, entitled "Special Housing Units" ("Directive 4933"), Ex. M to 12/22/00 Declaration of Stephen Elliot, plaintiff's counsel ("Elliot Decl."); *see also* N.Y. Comp.Codes R. & Regs. ("NYCRR"), tit. 7, § 304.3 (1999); 12/4/00 Deposition of Robert H. Kuhlmann ("Kuhlmann Dep."), Ex. B to 12/22/00 Declaration of Aviva Wertheimer, plaintiff's counsel ("Wertheimer Decl."), at 22–23; 12/5/00 Deposition of D.G. Aidala ("Aidala I Dep."), Ex. E to Wertheimer Decl., at 77, 81; 11/21/00 Deposition of Donald Selsky ("Selsky Dep."), Ex. A to Wertheimer Decl., at 19, 56–57, 61.

On August 5, 1998, during his confinement in the Sullivan SHU, Aidala placed plaintiff under a restraint order because he verbally harassed a corrections officer. Pursuant to the order, mechanical restraints were placed on plaintiff's hands and waist whenever he was removed from his cell.[5] The restraint order remained in place for twenty-eight consecutive days.[6]

As a general matter, inmates in the Sullivan SHU exercise in individual exercise yards, often called "cages," located near the SHU.[7] *See* 12/6/00 Photos of Sullivan Exercise Cage, Exs. G, H to Elliot Decl. Only one inmate at a time exercises in each cage. *See* 12/6/00 Deposition of Peter J. Healy, Jr. ("Healy Dep."), Ex. F to Wertheimer Decl., at 87–88; 12/7/00 Deposition of Peter Brickner ("Brickner Dep."),

Ex. I to Wertheimer Decl., at 31–32. The individual cages are separated from each other by solid concrete walls. *See* Healy Dep. at 80. The cages are open to the sky, but are covered with wire fencing. *See id.* at 100; *see also* 12/6/00 Deposition of Douglas Smith ("Smith Dep."), Ex. H to Wertheimer Decl., at 20. The front wall of the cage consists of "no-climb" fencing. *See* 12/4/00 Deposition of Jeffrey Portz ("Portz I Dep."), Ex. C to Wertheimer Decl., at 20. The door to the exercise cage is made of iron and is locked during the time an inmate is in the cage. *See* 12/5/00 Deposition of Jeffrey Portz ("Portz II Dep."), Ex. D to Wertheimer Decl., at 78–79; 12/6/00 SHU Photo of Exercise Cage Door, Ex. E to Elliot Decl. The exercise cage doors, like SHU cell doors, contain a small (approximately six inches by ten inches), separately lockable "hatch" through which an inmate may extend his hands so that a corrections officer can apply or remove restraints without unlocking the door. *See* Aidala I Dep. at 104; Portz I Dep. at 6–7; 12/6/00 SHU Photo of Exercise Cage Door Hatch, Ex. F to Elliot Decl.

The mechanical restraints worn by plaintiff during his one hour in the exercise cage consisted of a steel chain fitted around his waist to which steel handcuffs were attached, thus allowing plaintiff to move his hands and arms only a few inches.[8] *See* Portz II Dep. at 65; Healy

---

5. Initially, Aidala ordered that plaintiff be restrained for a period of seven days, the standard duration of a restraint order. At the end of the seven-day period, Aidala and Healy reviewed the restraint order and decided to renew it. The restraint order was renewed a total of three times.

6. There is no limit to the number of days an SHU inmate may be subject to a restraint order. *See* 7 NYCRR § 300 et seq.

7. The exercise cages are approximately ten feet by twenty feet. *See* Elliot Decl. ¶ 9. No

exercise equipment is provided in the cages, but the space permits an inmate to engage in activities such as calisthenics, jogging, walking, push-ups and sit-ups. *See* Kuhlmann Dep. at 23; Aidala I Dep. at 81–82.

8. Under SHU regulations, leg irons may be applied in addition to the wrist and arm restraints. *See* Directive 4933 at VIII(D)(1). No such restraints were placed on plaintiff.

Dep. at 47; Brickner Dep. at 55; Aidala I Dep. at 52; *see also* 12/6/00 SHU Photo of Mechanical Restraints, Ex. K to Elliot Decl.

The obvious purpose of the mechanical restraints is to restrict the mobility of the prisoner. *See* Brickner Dep. at 54–55; Smith Dep. at 27. Movement in such restraints is so restrictive that if an inmate were to lose his balance he could fall and would be unable to prevent serious injury. *See* Brickner Dep. at 57–58; Aidala I Dep. at 87. The helplessness of a prisoner in restraints, and the resulting hazard to the prisoner's safety, is one reason that the Sullivan policy requires a corrections officer to hold onto the waist chain while moving a prisoner. *See* Aidala I Dep. at 87; *see also* 6/9/98 Sullivan SHU Policy and Procedures Manual ("Sullivan SHU Manual"), Ex. L to Elliot Decl., at 7.

During the summer of 1998, the following procedures were followed when escorting plaintiff to the exercise cage.[9] The lockable hatch in plaintiff's cell door was opened from the outside. *See* Brickner Dep. at 53–54; Portz II Dep. at 69–71; *see also* 12/6/00 SHU Photos of Cell Door, Exs. A, D to Elliot Decl. Plaintiff was then directed to place his hands through the hatch, whereupon the corrections officer placed him in handcuffs which were already attached to the waist chain. *See* Portz II Dep. at 70. Plaintiff was directed to completely turn around so that the waist chain wrapped around his body. *See id.* at 70–71. The officer then secured the waist chain with a padlock. *See* Healy Dep. at 59–60. While plaintiff was escorted to the exercise cage, at least one officer held the waist chain. *See* Aidala I Dep. at 87. Plaintiff was then locked in the exercise cage. Even though there is a hatch in the exercise cage door for the purpose of safely removing and re-applying restraints, prison officials never utilized the hatch; rather, they left plaintiff in the restraints during his exercise period. *See* 12/6/00 Deposition of Kenneth J. Sanok ("Sanok Dep."), Ex. G to Wertheimer Decl., at 35.

According to plaintiff's expert, Dr. Gary Sforzo,[10] plaintiff was unable to do push-ups, sit-ups, jumping jacks or to run in place while in the restraints. *See* 12/19/00 Declaration of Gary A. Sforzo, Ph.D ("Sforzo Decl."), at 9–10; 1/9/01 Transcript of *Daubert* Hearing ("Tr.") at 21–25; Brickner Dep. at 75. Sit-ups and back exercises would have been painful or impractical because of the chain around plaintiff's waist. *See* Sforzo Decl. at 10; Tr. at 25; Portz II Dep. at 85. Running in place would have been hazardous because of the loss of balance resulting from the restriction of arm movement and because plaintiff would be unable to break his fall if he were to lose his balance. *See* Sforzo Decl. at 9; Tr. at 21–24.

**B. Restriction of Plaintiff's Other Out-of-Cell Activities**

Plaintiff alleges that his other out-of-cell activities were also severely restricted. With the exception of the one hour out-of-cell exercise period, occasional trips to the shower and meetings with visitors, plaintiff was confined to his cell. *See* Defendants' Response to Plaintiff's Statement Pursuant to Local Rule 56.1 in Opposition to His Motion for Partial Summary Judgment, dated January 3, 2001 ("Def.Resp."), ¶ 2.

**C. Opportunity for In-Cell Exercise**

Plaintiff alleges that his opportunity for in-cell exercise was severely restricted.

---

**9.** This procedure remains in effect today. *See* 7 NYCRR § 300 et seq.

**10.** Dr. Sforzo is Chairman of the Graduate Program in Exercise and Sport Sciences at Ithaca College in Ithaca, New York.

The cell contained a bed, toilet, sink, desk and stool.[11] *See* 12/6/00 SHU Photos of Plaintiff's Cell, Exs. C, D to Elliot Decl. It did not have air-conditioning or an outside window. *See* 1/12/01 Supplemental Report of Gary A. Sforzo, Ph.D ("Supp.Rep.") at 6; *see also* Portz II Dep. at 105; Elliot Decl. ¶¶ 4, 5. The ventilation in the cell area was poor, compounded by the fact that many of the SHU inmates smoked.[12] *See* Aidala I Dep. at 51; Elliot Decl. ¶ 8. Defendants, however, claim that the Sullivan SHU met the standards of The American Corrections Association for air exchange rates in 1998. *See* 12/21/98 Air Ventilation Survey for 1998, Ex. G to 1/5/01 Affidavit of June Duffy, defendants' counsel ("Duffy Aff."). The experts reach different conclusions as to whether plaintiff could have engaged in any meaningful exercise in his cell in August of 1998. *See* Supp. Rep. at 6–7; 1/4/01 Report of Dr. Michael D. Robinson [13] ("Robinson Rep."), Ex. F. to Duffy Aff., at 2.

## D. Justification for the Deprivation

Directive 4933 states that "whenever an inmate is under a restraint order, that inmate will be shackled whenever he/she leaves the SHU cell for any reason." Directive 4933 at VIII(D)(2). There are six exceptions to this rule: (1) upon request of a physician; (2) upon request of the Parole Board at a Parole Hearing; (3) upon the request of a judge or magistrate; (4) when the inmate can be secured in a shower room during the scheduled shower period; (5) upon order of the Deputy Superintendent for Security Services or higher ranking authority; or (6) when in a general population visiting room and not in a non-contact area. *See id.* at VIII(D)(2)(b)(1)-(6).

Prior to March of 1998, it was the policy and practice in Sullivan to shackle an inmate when he left his cell to go to the exercise cage, but to remove the restraints once the inmate had been secured in the exercise cage in the same manner as was done when an inmate was secured in his cell.[14] *See* Healy Dep. at 69; Sanok Dep. at 35; Portz II Dep. at 78–79.

Pursuant to a memorandum issued by Healy on March 17, 1998, the interpretation of Directive 4933 was changed to require that prisoners remain restrained even after they were secured in the SHU exercise cage. *See* 3/17/98 Memorandum from Healy to "All SHU Staff and Inmates" ("March 17 Mem."), Ex. F to Declaration of Amy Tully Ackert, plaintiff's

---

11. The size of plaintiff's cell is in dispute. Plaintiff asserts that the cell measures six feet by ten feet, *see* Elliot Decl. ¶ 4, while defendants assert that there is an additional foot and a half in length and width. *See* Def. Resp. ¶ 3.

12. As of January 1, 2001, all DOCS facilities are smoke free. *See* Def. Resp. ¶ 45.

13. Dr. Robinson is a medical doctor specializing in Physical Medicine and Rehabilitation.

14. The Sullivan facility applies a completely different policy when inmates under a restraint order are secured in the shower. Sullivan SHU inmates subject to restraint orders are entitled to three showers a week. *See* Sullivan SHU Manual at 11. The shower door consists of iron bars. *See* Aidala I Dep. at 103. Officers are able to apply or remove restraints from an inmate through a gap in the bars in the center of the door, similar to the hatches in the doors of the cells and exercise cages. *See id.* at 103–04; *see also* 12/6/00 SHU Photos of Shower Door, Exs. I, J to Elliot Decl. Prisoners subject to restraint orders are routinely released from restraints after they have been secured in the shower. *See* Healy Dep. at 49.

The Sullivan policy regarding visitation is also different. SHU inmates subject to restraint orders are generally entitled to one visit per week. *See* Selsky Dep. at 19. When the prisoner is taken to a visiting area, the restraints are routinely removed. *See id.* at 74; Aidala I Dep. at 74–75.

counsel ("Ackert Decl."). Plaintiff complained of remaining shackled during his daily out-of-cell exercise period. In response to this complaint, Aidala stated:

> The application of mechanical restraints is in no way a punishment. Mechanical restraints are an insurance that you will be moved safely from your cell to the exercise area and back to your cell without any need or possibility of having to use physical force. This procedure is as much for your safety and well being as it is for all other parties concerned.

8/21/98 Memorandum, Ex. 11 to 2/2/99 Deposition of Plaintiff ("Pl.Dep.").[15]

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Legal Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law[,] [while] [a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Konikoff v. Prudential Ins. Co. of Am.,* 234 F.3d 92, 97 (2d Cir.2000) (internal quotation marks and citations omitted).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino,* 238 F.3d 145, 150 (2d Cir.2001). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.' " *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). However, the non-moving party may not "rest upon ... mere allegations or denials." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal quotation marks, citations, and alterations omitted).

### B. The Eighth Amendment Claim

██ The Eighth Amendment prohibits punishment that involves the unneces-

---

**15.** Plaintiff contends that the safety justification is not supported by any evidence. During discovery, none of the defendants identified a single incident in which a guard was injured or endangered in the course of removing or applying restraints to an inmate locked in an exercise cage. *See* 12/7/00 Deposition of D.G. Aidala ("Aidala II Dep."), Ex. J to Wertheimer Decl. at 203–04; Healy Dep. at 70–71; Kuhlmann Dep. at 71; Brickner Dep. at 71–74; Sanok Dep. at 36–37; Smith Dep. at 36; Portz II Dep. at 83–84. Nor did any defendant identify a single incident in which guards were required to enter an exercise cage to subdue an inmate who refused to come to the door for the application of restraints at the end of his allotted exercise period. *See* Def. Resp. ¶ 53. Indeed, no incident has been identified that justified changing the previous interpretation of Directive 4933. *See* Healy Dep. at 70–71; Brickner Dep. at 67–68; Sanok Dep. at 38; Smith Dep. at 35.

sary and wanton infliction of pain. *See Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). A prisoner's conditions of confinement fall within the ambit of the Eighth Amendment. *See id.* at 345, 101 S.Ct. 2392. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999) (internal quotation marks omitted).

■ In order to prevail on an Eighth Amendment claim, the plaintiff must satisfy both an objective element and a subjective element.[16] *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir.1996). To satisfy the objective element, the plaintiff must prove a sufficiently serious deprivation of a basic human need. *See Wilson v. Seiter*, 501 U.S. 294, 303–04, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Farmer*, 511 U.S. at 834, 114 S.Ct. 1970 (holding that a prison official's acts must deprive the inmate of "the minimal civilized measure of life's necessities"); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir.1985) (a plaintiff must demonstrate that the conditions of his confinement resulted "in unquestioned and serious deprivations of basic human needs") (citation omitted). The subjective element requires a plaintiff to show that the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. In cases involving prison conditions, that state of mind is one of "deliberate indifference." *Id.; see also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir.1997); *Jolly*, 76 F.3d at 480.

### 1. The Objective Element

■ With respect to the objective element, this Court has already found, based on clearly established law in this Circuit, that "exercise is one of the basic human needs protected by the Eighth Amendment." *Williams I*, 111 F.Supp.2d at 292 (citing *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir.1996) and *Anderson*, 757 F.2d at 35). However, not every deprivation of exercise amounts to a constitutional violation. Rather, a plaintiff must show that he was denied all meaningful exercise for a substantial period of time. *See Davidson v. Coughlin*, 968 F.Supp. 121, 129 (S.D.N.Y.1997). Factors to consider in making this determination are: (1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out-of-cell activities; (4) the opportunity for in-cell exercise; and (5) the justification for the deprivation. *See Williams I*, 111 F.Supp.2d at 291; *Amaker v. Goord*, No. 98 Civ. 3634, 1999 WL 511990, at *6 (S.D.N.Y. July 20, 1999) (citing *Davidson*, 968 F.Supp. at 130).

Courts have granted summary judgment to prisoners where the magnitude of the deprivation of exercise was patent. *See, e.g., Williams v. Greifinger*, 918 F.Supp. 91, 98 (S.D.N.Y.) (holding plaintiff was entitled to summary judgment on Eighth Amendment claim because he was deprived of exercise for 589 days), *rev'd on other grounds*, 97 F.3d 699 (1996); *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir.1996) (upholding preliminary injunction requiring prison officials to release inmate from medical keeplock when inmate allowed out of cell only ten minutes per week for over

---

**16.** In addition, it is well settled in the Second Circuit that "personal involvement of defendants in [an] alleged constitutional deprivation[ ] is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977). The standard for determining whether or not a defendant is "personally involved" in the alleged constitutional deprivation is thoroughly discussed in *Williams I*, 111 F.Supp.2d at 293.

three-and-one-half years); *cf. Allen v. Sakai*, 48 F.3d 1082, 1086–88 (9th Cir.19945) (affirming district court's denial of qualified immunity where inmate allowed only forty-five minutes of outdoor exercise per week for period of six weeks and segregation was indefinite); *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir.1992) (holding that qualified immunity is not appropriate because reasonable prison official should have known that depriving inmate of out-of-cell exercise for periods of seven months and eleven months would violate Eighth Amendment).

By contrast, depriving a prisoner of exercise for a relatively brief period of time has resulted in summary judgment in defendants' favor. *See, e.g., Green v. Ferrell*, 801 F.2d 765, 771–72 (5th Cir.1986) (holding that Eighth Amendment was not violated by policy denying inmates out-of-cell exercise for first fifteen days of punitive confinement); *Gibson v. City of New York*, No. 96 Civ. 3409, 1998 WL 146688, at *3 (S.D.N.Y. Mar. 25, 1998) (denying prisoner right to exercise for eight days in a sixty day period does not violate Eighth Amendment); *Davidson*, 968 F.Supp. at 131 (deprivation of outdoor exercise for fourteen days did not violate Eighth Amendment); *Arce v. Walker*, 907 F.Supp. 658, 662–63 (W.D.N.Y.1995) (holding that Eighth Amendment not violated when inmate in administrative confinement was deprived of out-of-cell exercise for eighteen out of nineteen days).

■ This case, however, falls between the bookends—neither extremely long nor short. Plaintiff has alleged that he was deprived of "meaningful" exercise for twenty-eight days. This presents a close constitutional case. *See Davidson*, 968 F.Supp. at 131 ("If, in fact, he had been deprived of all outdoor exercise for thirty days, this case would present a closer constitutional question."). Accordingly, a jury must determine whether defendants' conduct constituted a sufficiently serious deprivation of exercise such that plaintiff was denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *cf. Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995) ("Disputes over reasonableness are usually fact questions for juries."); *Banks v. Person*, 49 F.Supp.2d 119, 125 (E.D.N.Y.1999) (same).

In addition, there are material issues of fact with regard to at least two of the five factors of the objective element test. For instance, relying on the testimony of plaintiff's expert witness, Dr. Sforzo, plaintiff contends that the handcuffs and waist chain restraints prevented him from engaging in "meaningful exercise."[17] *See* Sforzo Decl. at 16. By contrast, defendants' expert witness, Dr. Michael D. Robinson, will testify that, even while subject to the restraints, plaintiff could walk and march, which are "well established aerobic exercises, shown to maintain and modestly improve aerobic fitness." Robinson Rep. at 2. Similarly, plaintiff and defendants disagree as to whether plaintiff had any meaningful opportunity for in-cell exercise[18] and whether defendants' actions

---

**17.** Plaintiff also relies on *Martinez v. Fairman*, No. 93 C 6225, 1995 WL 383072, at *5 (N.D.Ill. June 22, 1995), where the court stated that "it is obviously impossible for a prisoner to engage in any meaningful activity while his limbs are restrained." However, in that case, the plaintiff was subject to handcuffs, shackles, and leg shackles. Here, unlike *Martinez*, Williams was not subject to leg shackles, thus increasing his range of movement.

**18.** Plaintiff contends that "the undisputed facts establish that the conditions in Mr. Williams' cell made meaningful exercise impossible: no air conditioning, no ventilation from the outdoors, extremely limited space, and pervasive cigarette smoke. If the conclusion were not obvious, an expert in exercise

were justified.[19] These disputes require weighing the credibility of both lay and expert witnesses—determinations within the province of a jury.[20] *See Dorsey v. McQuillian,* No. 94 Civ. 3578, 1997 WL 772779, at *4 (S.D.N.Y. Dec. 15, 1997) (denying summary judgment on Eighth Amendment claim where parties disputed whether plaintiff would have exercised had he been offered the opportunity to do so during his time in medical keeplock).

## 2. The Subjective Element

In order to satisfy the subjective element of an Eighth Amendment violation, a plaintiff must show that defendants acted with deliberate indifference. A prison official's conduct does not rise to the level of deliberate indifference unless he "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Put differently, the "official must both be aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The subjective element "entails something more than mere negligence." *Id.* at 835, 114 S.Ct. 1970.

At this stage of the proceedings, however, the Court cannot conclude that defendants acted with deliberate indifference. Whether defendants ignored a substantial risk of serious harm to plaintiff necessarily depends on whether plaintiff was deprived of a basic human need. If, for instance, the jury finds that plaintiff was not deprived of "meaningful" exercise, then plaintiff was not exposed to a substantial risk of serious harm and defendants could not have acted with deliberate indifference.

Because there are disputed issues of material fact as to both the objective and the subjective prongs of the alleged Eighth Amendment violation, plaintiff's motion for partial summary judgment is denied.

---

physiology has opined—and there is no contrary evidence in the record—that meaningful exercise in such conditions is not possible." Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 17. Plaintiff is overstating his case. The following testimony of Dr. Sforzo during the *Daubert* hearing is instructive:

  Q: Would you agree that raising and lower[ing] his arms, raising and lowering his legs during the time he was in the cell, that is 23 hours a day, if he did it for several hours a day for each day, that would be meaningful exercise?

  A: Meaningful in the sense that it is for Mr. Williams [?] He would still be detraining. It would be [doing] much less than he would normally be doing on a given day but looking at the word "meaningful" in maybe a different sense it is much better than if he had been confined to bed rest and being able to lift his legs and arms, yes.

Tr. at 66–67. Dr. Sforzo also admitted that plaintiff apparently could perform "deep knee

bends" and "jumping jacks" while in his cell. *Id.* at 79–80.

19. Plaintiff contends that defendants' purported justification is unsupported by the evidence. *See supra* note 15.

20. In addition, the question whether plaintiff actually suffered a "physical injury" under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, is a question of fact for the jury. *See Waters v. Andrews,* No. 97–CV–407, 2000 WL 1611126, at *8 (W.D.N.Y. Oct. 16, 2000) (holding that a reasonable jury could find the term "physical injury" as used in the PLRA to include exposure to noxious odors and dreadful conditions of confinement, without undermining Congress' intent); *Williams I,* 111 F.Supp.2d at 291 n. 4 ("[T]here are issues of fact here that preclude summary judgment on the issue of whether plaintiff suffered a physical injury sufficient to satisfy the PLRA.").

## III. DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT BASED ON QUALIFIED IMMUNITY

### A. The Summary Judgment Standard in Qualified Immunity Cases

▆ The doctrine of qualified immunity shields government officials acting in their official capacity from suits for money damages under 42 U.S.C. § 1983 unless their actions violate clearly established rights of which an objectively reasonable official would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This policy is justified in part by the risk that the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

▆ Whether a right is "clearly established" turns on an analysis of whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640, 107 S.Ct. 3034. For purposes of qualified immunity, "it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity." *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990) (citing *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)). A court need not have passed on the identical course of conduct in order for its illegality to be "clearly established"; however, "in light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 639–40, 107 S.Ct. 3034; *see also Greifinger*, 97 F.3d at 703. Furthermore, a law is considered "clearly established" so long as this "circuit's decisions 'clearly foreshadow' a particular ruling on the issue." *Varrone v. Bilotti*, 123 F.3d 75, 79 (2d Cir.1997) (quoting *Shabazz v. Coughlin*, 852 F.2d 697, 701 (2d Cir. 1988)).

▆ Even if the applicable law was clearly established when the purported violation occurred, officials may still successfully assert qualified immunity if they can show that their actions were "objectively reasonable." *See Greifinger*, 97 F.3d at 703. That is, officials seeking to establish qualified immunity must show that "reasonable persons in their positions would not have understood that their conduct was within the scope of the established prohibition." *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir.1996). Summary judgment on the basis of a claim of qualified immunity is therefore only appropriate

> if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.

*Id.; see also Robison v. Via*, 821 F.2d 913, 920–21 (2d Cir.1987). In other words, if any reasonable trier of fact could conclude that the defendants' conduct was objectively unreasonable, then the defendants are not entitled to summary judgment.

### B. The Clearly Established Right to Exercise

▆ Because exercise is one of the basic human needs protected by the Eighth Amendment, the Second Circuit has "described the right to exercise in unequivocal terms, stating that 'courts have recognized that some opportunity to exercise must be afforded to prisoners.'" *Greifinger*, 97

F.3d at 704 (quoting *Anderson,* 757 F.2d at 35). More specifically, this right to exercise must include some out-of-cell exercise. *See Greifinger,* 97 F.3d at 704 and n. 5 (relying on the uniform conclusions of the other circuits "that the Eighth Amendment requires ... prison inmates be allowed some out-of-cell exercise") (citations omitted); *see also Sostre v. McGinnis,* 442 F.2d 178, 186 (2d Cir.1971) (the court held that one hour of exercise "in a small, enclosed yard, open to the sky" was acceptable under the Eighth Amendment, albeit not a mandatory minimum standard).

▮▮▮▮▮▮ A prisoner may be denied out-of-cell exercise under what is termed a "safety exception." *See Greifinger,* 97 F.3d at 704. The Second Circuit has expressly recognized that deprivations of exercise for safety reasons "must be limited to unusual circumstances or circumstances in which exercise is impossible because of disciplinary needs." *Id.* (internal quotation marks and citations omitted). In addition, even if a prisoner is deemed an unusual security risk, that fact alone would not justify subjecting him to a blanket policy denying such prisoners any opportunity for out-of-cell exercise. "[T]he fact that an inmate is violent may justify segregating him or her from the general population, but does not necessarily justify a prison's failure to make other exercise arrangements." *Id.* at 704–05 (internal quotation marks and citations omitted).

### C. The Objectively Reasonable Standard

▮▮▮▮ The Supreme Court and Second Circuit have encouraged the use of summary judgment when qualified immunity is raised as a defense. *See Harlow,* 457 U.S. at 815–16, 102 S.Ct. 2727; *Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). However, in order to grant qualified immunity this Court must find

that, viewing the evidence in the light most favorable to the plaintiff, "no rational jury could fail to conclude" that it was objectively reasonable for defendants to believe that depriving plaintiff of out-of-cell exercise for a period of twenty-eight days would not violate his Eighth Amendment rights. *See LaBounty v. Coughlin,* 137 F.3d 68, 74 (2d Cir.1998) (reversing grant of summary judgment to defendants based on qualified immunity); *see also Greifinger,* 97 F.3d at 703 (same); *In re State Police Litig.,* 88 F.3d at 123 (declining to review district court's decision denying qualified immunity based on the existence of issues of fact).

While this Circuit has held that an hour a day of out-of-cell exercise comports with the requirements of the Eighth Amendment, *see Sostre,* 442 F.2d at 186, it has never established a constitutional minimum. *See Amaker,* 1999 WL 511990, at *6; *Davidson,* 968 F.Supp. at 129–30. Nonetheless, at the time of the alleged violation it was apparent that a denial of all meaningful out-of-cell exercise for a significant period of time without adequate justification constituted an Eighth Amendment violation. *See Greifinger,* 97 F.3d at 703–705.

Furthermore, qualified immunity would *not* be warranted if it was objectively *unreasonable* for defendants to believe that their actions were not unlawful. The jury's determination as to whether plaintiff has satisfied the objective prong of an Eighth Amendment violation bears directly on this question. For example, if the jury finds that the restraints deprived plaintiff of any opportunity for meaningful out-of-cell exercise, that plaintiff could not "meaningfully exercise" in his cell, and that there was no adequate justification for keeping him restrained, a rational jury could indeed conclude that it was not objectively reasonable for the defendants to

believe that their actions did not violate plaintiff's right to exercise. *See Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999) ("Summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness."); *see also Kaminsky v. Rosenblum,* 929 F.2d 922, 927 (2d Cir.1991) (finding that the district court was correct in not determining whether it was objectively reasonable for defendants to believe their acts were lawful because facts in dispute were relevant to that determination). Indeed, this Circuit has ruled, in the context of an Eighth Amendment claim of deliberate indifference to a prisoner's medical needs, that if a defendant is found to have been "deliberately indifferent to [a prisoner's] serious medical needs, [the defendant] is not entitled to qualified immunity because it would not be objectively reasonable for him to believe his conduct did not violate [plaintiff's] rights." *Hathaway v. Coughlin,* 37 F.3d 63, 69 (2d Cir.1994).

Accordingly, defendants' cross-motion for summary judgment on the basis of qualified immunity is denied.

### D. Lower Ranking Officers

■■■ Qualified immunity is granted to defendants Portz, Sanok, and Smith. Higher ranking officials are held to a higher standard of legal knowledge than their subordinates. *See Charles v. Maul,* 214 F.3d 350, 360 (2d Cir.2000). As these officers had no input into the development and implementation of the restraint policy and were merely following what they believed to be lawful orders, they are entitled to qualified immunity. *See Varrone,* 123 F.3d at 81 ("Since the four subordinate officers were merely carrying out [the Inspector General's] instruction and that of their immediate superior when they ordered the strip search, they were entitled

to [qualified] immunity."); *see also Bilida v. McCleod,* 211 F.3d 166, 174–75 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer supported qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justifications for his actions exist."); *cf. Lauro v. Charles,* 219 F.3d 202, 216 n. 10 (2d Cir. 2000) (fact that defendant was following orders given by his superiors further supported the existence of qualified immunity).

## IV. CONCLUSION

For the reasons stated above, plaintiff's motion for partial summary judgment is denied and defendants' cross-motion for summary judgment based on qualified immunity is denied in part and granted in part. If necessary, the issue of qualified immunity will be addressed again at the conclusion of trial. *See Blissett v. Coughlin,* 66 F.3d 531, 538 (2d Cir.1995) ("Where summary judgment is inappropriate, and the case proceeds to trial, the defense of qualified immunity *may* be presented to the jury or *may* be decided by the court in a motion for judgment as a matter of law.") (emphasis added); *see also Oliveira v. Mayer,* 23 F.3d 642, 650 (2d Cir.1994) (finding that district court erred by not submitting qualified immunity to the jury after the court ruled in plaintiff's favor on liability).

SO ORDERED.